**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **LEVI ARTHUR FEDD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| VS. | : | |
| | : | CIVIL No: 5:15-CV-104-MTT-CHW |
| **Doctor ALMEDOM, et al.,** | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| **Defendants** | : | BEFORE THE U. S. MAGISTRATE JUDGE |

**REPORT & RECOMMENDATION**

On March 23, 2015, Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983. Doc. 1. Plaintiff alleges that Defendants Almedom, Sachdeva, Lawson, Starling, and Coftey denied Plaintiff medical treatment for a "hold" (presumably a hole, wound, or open sore) in his leg despite the fact that Defendants were personally aware of his injury, knew that "feve[r] was com[ing] out of it [all of] the time," and knew that Plaintiff's pain was so great that he could not sleep, he required a cane to walk, and he was unable to walk or stand for long periods. Plaintiff states that a Doctor told him the wound needed to be "cut out." Doc. 1, p. 5. Plaintiff further alleges that, because of Defendants' failure to provide him treatment, he suffered great pain for a year, his "blood [pressure] stayed up" and he eventually required surgery on his leg. Defendants Almedom, Coftey, Lawson, and Sachdeva filed a Motion to Dismiss, as Defendant Starling had yet to be served. Docs. 13; 14. Defendant Starling was later personally served, and joined in Defendants' previously filed Motion to Dismiss. Docs. 24; 35. Defendant Starling also filed a separate Motion to Dismiss Plaintiff's Amended Complaint. Doc. 33. Plaintiff has filed two Motions for Appointment of Counsel, as well as a Motion to Dismiss the Court's Stay Order. Doc. 25.

Because Plaintiff failed to exhaust his available administrative remedies before he filed his complaint, it is **RECOMMENDED** that the Defendants' Motion (Doc. 14) be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**.

## EXHAUSTION

A.  The Prison Litigation Reform Act

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077

2

(11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

Also important to this specific case, "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Thus, even if Plaintiff exhausted his administrative remedies after he filed his complaint, the Court cannot take action on those claims. See 42 U.S.C. § 1997e(a).

B.   Available Administrative Remedies

During the period relevant to this case, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 15-1, pp. 11-24. At step one, a prisoner wishing to file a grievance is required to file no later than ten (10) calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.*, p. 17. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id.* The Warden must respond within forty (40) days. *Id.*, p. 20. If this initial grievance is rejected, the prisoner is

3

required to appeal within seven (7) calendar days. *Id.*, p. 21. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id.*

C.   Analysis

Applying the *Turner* analysis to the procedures outlined above, it is unclear whether Defendants are entitled to dismissal at step one. Plaintiff indicates in his complaint that he filed a grievance, as well as a Health Services Request Form, but as of the date of filing his complaint, "nothing had been done." Doc. 1, pp. 3-4. However, he also states that he did not present the facts relating to his complaint to the appropriate grievance committee. Doc. 1, p. 3. Plaintiff continuously asserts in his various filings that his complaint should not be dismissed for failure to exhaust (Doc. 18, p. 9; Doc. 25, p. 15), but provides no evidence in support of that assertion. When accepted as true, Plaintiff's complaint and subsequent filings shows that the normal grievance procedure was available to him, and that Plaintiff filed a grievance for Defendants conduct. But Plaintiff's complaint is unclear as to whether or not he appealed those grievances. Therefore, the Court must proceed to the second step to make specific findings of fact in order to resolve the disputed factual issues related to exhaustion.

At step two of the *Turner* analysis, the Court must weigh the evidence and make findings of fact. In support of their Motion to Dismiss, Defendants present the following evidence: Affidavit of Caleb McClairen (Doc. 15-1, pp. 2-9); Georgia Department of Corrections Standard Operating Procedure IIB05-0001 regarding the Statewide Grievance Procedure during the time applicable to this case (Doc. 15-1, pp. 11-24); Grievance Number 172416 and associated documents (Doc. 15-1, pp. 26-35); Grievance Number 173448 and associated documents (Doc. 15-1, pp. 37-41); and Grievance Number 188228 and associated documents (Doc. 15-1, pp. 37-41). The weight of the foregoing evidence supports a finding that Plaintiff did not fully and

properly exhaust his administrative remedies.

Caleb McClairen is employed by the Georgia Department of Corrections as the Chief Counselor at Dooly State Prison. Doc. 15-1, p. 3. He affirms that all inmates receive an oral explanation of the grievance process and an outline of the process in their copy of the inmate Orientation Handbook. *Id.* Inmates may also review the entire GDC SOP for the grievance process in the law library of each GDC facility. *Id.* Mr. McClairen also reviewed Plaintiff's grievance history, which is also in the record, and reveals that Plaintiff has filed four (4) grievances at Dooly State Prison, three before the filing of this lawsuit which relate to the instant claims. *Id.* at. 7. Each relevant grievance is discussed below.

On May 6, 2014, Plaintiff filed Grievance 172416. Doc. 15-1, pp. 26-35. Plaintiff alleged that he was receiving inadequate medical attention for pain in his back and leg, and that he was receiving inadequate medication for his pain. Doc. 15-1, pp. 26-27. This grievance was evaluated and denied by the Warden on June 13, 2014, as Plaintiff had been previously evaluated upon arrival at Dooly State Prison, had been prescribed medication for the pain, had an x-ray of his back performed, and had surgery scheduled for his leg. Doc. 15-1, pp. 28-33. Plaintiff received the decision on June 17, 2014. Doc. 15-1, p. 33. Plaintiff submitted an appeal form on July 2, 2014, but his appeal was rejected as untimely, because it was filed outside the seven calendar day period.

On May 20, 2014, Plaintiff filed Grievance 173448. He stated that on May 8, 2014, Dooly State Prison, and Dr. Sachdeva in particular, denied him a stronger dosage of medication for the pain in his back. Doc. 15-1, p. 37. This grievance was rejected by the Warden on June 18, 2014, as it was filed outside the ten day period from the date of the event. Plaintiff acknowledged receipt of the grievance on June 24, 2014. Doc. 15-1, p. 41. Plaintiff did not appeal this rejection. Doc. 15-1, p. 8.

On January 7, 2015, Plaintiff filed Grievance 188228. Doc. 15-1, p. 43. He alleged that on January 5, 6, and 7 of 2015 he was denied his pain medication by Defendant Starling and he also alleged that the entire staff was harming him and causing him pain by denying him medical care. *Id.* The Warden denied the grievance on February 13, 2015 as his investigation determined that Plaintiff refused to take his pain medication at the pill call window before leaving the window. Doc. 15-1, p. 54. Plaintiff was warned that his refusal would result in a discontinuation of medication disbursement, and Plaintiff's medications were discontinued pursuant to that warning on January 5, 2015. *Id.* Plaintiff acknowledged receipt of the warden's response on February 20, 2015, and Plaintiff appealed on February 27, 2015. Doc. 15-1, p. 55. Plaintiff's appeal was denied on March 30, 2015, but Plaintiff did not acknowledge receipt of the appeal response until May 27, 2015. Doc. 15-1, p. 57.

Upon review of the above-stated record, Plaintiff's only fully exhausted grievance was not exhausted before he filed his complaint on March 23, 2015. Because the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 90, 93–97, and because a Plaintiff "must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit," *Brown*, 212 F.3d at 1207 (emphasis added), Plaintiff did not successfully exhaust his administrative remedies as to his deliberate indifference claims against Defendants. Therefore, his complaint must be dismissed.

## CONCLUSION

Because Plaintiff failed to exhaust his available administrative remedies before he filed his complaint, it is **RECOMMENDED** that the Defendants' Motion (Doc. 14) be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this

case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 11th day of January, 2016.

                                                    s/ Charles H. Weigle
                                                   Charles H. Weigle
                                                   United States Magistrate Judge